## C. H. WARREN, Appellant, v. JOHN F. SMITH, Respondent.

No. 1949. Decided March 23, 1909 (100 Pac. 1069).

1. BILLS AND NOTES—BONA FIDE HOLDER. While the robber or finder of a negotiable instrument can acquire no title against the real owner, still if it be indorsed in blank or payable or indorsed to bearer one acquiring it from a robber or finder *bona fide* for a valuable consideration, and before maturity without notice of the loss, may retain it against the true owner. (Page 459.)

2. TROVER AND CONVERSION—DEMAND. Trover lies without previous demand and refusal against one improperly possessing himself of a negotiable instrument stolen from the owner, or against one receiving payment even in good faith of such instrument under a forged indorsement. (Page 459.)

3. BILLS AND NOTES. Under Comp. Laws 1907, section 1611, providing that every holder is deemed *prima facie* to be a holder in due course, but, when it is shown that the title of any person who negotiated the instrument was defective, the burden is on the holder to prove that he or some one under whom he claimed acquired title as a holder in due course, where plaintiff proved that a check was stolen from him, the burden shifted to defendant, an indorsee, to prove that he or some one under whom he claimed acquired title as a holder in due course. (Page 460.)

4. BILLS AND NOTES. Under Comp. Laws 1907, section 1575, providing that, where a signature is forged, it is wholly inoperative and no right to retain the instrument or to enforce payment thereof against any party thereto can be acquired under such signature, even a *bona fide* holder without notice acquires no title to a negotiable instrument under a forged indorsement. (Page 460.)

APPEAL from the Second District Court, Weber County.—
*Hon. J. A. Howell,* Judge.

Action to recover money. The opinion states the facts.
From a judgment for the defendant, the plaintiff appealed.

REVERSED.

*P. L. Williams, Geo. H. Smith, John G. Willis* and *H. B.
Thompson* for appellant.

*A. R. Heywood* for respondent.

APPELLANT'S AUTHORITIES.

Title to the check never passed out of the plaintiff.
.(Randolph on Commercial Paper, sec. 1893; *Anderson v.
Bank,* 20 N. Y. Suppl. 511; *Palm v. Watt,* 7 Hun 317; sec.
1575, Compiled Laws of Utah 1907; *Bank v. Bank,* 1 Hill
387; *Anderson v. Bank,* 20 N. Y. Supp. 511; Compiled
Laws 1907, sec. 1575; *Beattie v. Bank,* 174 Ill. 571, 43 L.
R. A. 655; *Foltier v. Schroder,* 19 La. Ann. 17, 92 Am.
Dec. 521; *Roach v. Woodall,* 91 Tenn. 206, 30 Am. St. Rep.
883; sec. 1611, Compiled Laws of 1907.

STRAUP, C. J.

The plaintiff alleged in his complaint that on March 1,
1904, the Southern Pacific Company, for services rendered,
issued and delivered to him its pay check, payable to his
order, and drawn on the treasurer of the Southern Pacific
Company, in the sum of $63.20; that on March 20th the
check was stolen from or lost by the plaintiff and his in-
dorsement forged thereon; that the check afterwards came
into the possession of the defendant, who collected thereon
the sum of $63.20; that the plaintiff received no part of the
money evidenced by the check; and that the defendant, by
reason of the premises, became indebted to the plaintiff in
such sum, no part of which had been paid. The defendant

in his answer admitted the issuance of the check, that it came into his hands, and that he collected the money evidenced by it, but, on information and belief, denied that the plaintiff was the payee named in the check, denied the alleged forgery of the indorsement, and alleged that the check was paid by the drawee April 2d, and that he had no notice or knowledge of any defect of the check, or of the indorsement thereon, until more than two years after its presentment for payment to the drawee. Upon these issues a trial was had before the court.

The plaintiff testified that he was an employee—a fireman —of the Southern Pacific Company at Montello, Nev.; that the check was given him on March 23rd, 1904, by the clerk of the roundhouse foreman at Montello for services rendered by him, and that he put the check in his pocketbook; that night when he retired—in a bunk car—he placed his pants between himself and the wall, with the pockets under the pillow; that, when he arose the next morning, he found his pants across the foot of the bed, and the pocketbook and check gone; that he had not indorsed the check, and that the indorsement on the check purporting to be his indorsement was a forgery, and that he had not sold, cashed, or negotiated the check in any manner; that he did not know who took the check from him, nor who wrote or indorsed his name on it; that, when he missed the check, he notified his foreman, and that he and the foreman wrote out a message and left it at the operator's office at Montello on March 25th, and that he also wrote a letter to the master mechanic and to the superintendent of the Salt Lake Division notifying them that the check was stolen. The check itself was exhibited to the plaintiff, who identified it, and testified that the indorsement thereon purporting to be his indorsement was not his signature, and was a forgery. He further testified that he did not know the check had been paid until about a year after it had been stolen, at which time it was shown him by a special detective of the Southern Pacific Company, who then asked him whether it was the one that

was stolen, and whether the signature purporting to be his signature was his, and that the plaintiff told him that it was the check, and that the signature was not his signature. The check itself shows that it was payable to the order of the plaintiff and bears the indorsement of the plaintiff's name, the defendant's name, the name of the Commercial National Bank of Ogden, and the name of a California bank, to which last-named bank the check was paid on its presentation by the Southern Pacific Company at San Francisco on April 4th, 1904.

The foregoing is, in substance, all of plaintiff's evidence. When he rested, the defendant also rested without offering any evidence. The court found the facts as follows: That the check was delivered to the plaintiff on March 23d at Montello; that it was stolen from him on March 25th; that the plaintiff had not indorsed the check, nor had he authorized anybody to do so; that the plaintiff had received no part of the money evidenced by it; that the defendant "became indorsee and indorser of said check on or about the 1st day of April, 1904, at Ogden City, Utah; that said check, indorsed with the name of the payee, was transferred and delivered to said defendant on or about April 1st, 1904, by the holder, without any notice of any infirmity, and on the same day the said defendant indorsed the said check to the Commercial National Bank of Ogden, who thereupon indorsed it to the Bank of California, at San Francisco, Cal., which said last-named bank on April 4th, 1904, presented said check to the drawee, who paid it and took possession of it, and thereafter, to wit, in the spring of 1905, returned it to the plaintiff herein, who thereupon learned for the first time that it had been paid by the drawee, and who immediately intrusted an agent of the said Southern Pacific Company with the collection thereof; that the plaintiff failed to present the check to the Southern Pacific Company for payment, and failed to demand payment of it or from any indorser thereon; that neither the defendant nor any subsequent indorser thereon had knowledge or notice of any de-

fect in the check for more than one year and seven months after the check had been cashed by the defendant. As conclusions of law the court found that the plaintiff delayed an unreasonable time and was negligent in failing to notify the defendant of the forged indorsement, and that the plaintiff was not entitled to recover. Judgment was accordingly entered for the defendant, from which the plaintiff has appealed.

He contends that the court erred in its findings and conclusions and in entering judgment for the defendant upon the facts found. We think the judgment is wrong. It is contrary to the findings and to the evidence. It is shown beyond dispute that the check is payable to the order of the plaintiff, that it was stolen from him, and that the indorsement of his name thereon was a forgery. The court so found. Under those conditions the check came into the hands of the defendant, who admitted in his answer that he "collected thereon the sum of $63.20," the amount of the check. While the findings show that the check was delivered to the defendant without notice of any infirmity, yet there is no evidence to support it, and neither the evidence nor the findings show that he paid a valuable consideration for the check. The law generally is to the effect that, "although the robber or finder of a negotiable instrument can acquire no title against the real owner, still if it be indorsed in blank, or payable or indorsed to bearer, a third party acquiring it from a robber or finder *bona fide* for a valuable consideration, and before maturity without notice of the loss, may retain it against the true owner. . . . But under a forged indorsement even a *bona fide* holder without notice acquires no title." (Daniels on Neg. Insts. [5th Ed.], sec. 1469.) Where the negotiable instruments are stolen, the owner may pursue them and the proceeds of them, until they reach the hands of a *bona fide* holder for value before maturity. In like manner an action of trover lies without previous demand and refusal against one who possesses himself improperly of the bill stolen

from the plaintiff, or against one who receives payment even in good faith of such stolen bill under a forged indorsement. (3 Randolph, Comm. Paper [2 Ed.], secs. 1682, 1683.) It is also well settled that, when the loss by the original owner or the theft from him is proven, the burden of proof shifts, and the holder must show that he acquired it *bona fide* for value and before maturity, or from some one who had a perfect title. (Daniels, Neg. Insts. [5th Ed.], sec. 1470.) To the same effect is our statute (section 1611, Comp. Laws 1907), which provides: "Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or someone under whom he claims acquired the title as a holder in due course." When the plaintiff proved that the check was stolen from him, the burden shifted to the defendant to prove that he, or some person under whom he claims, acquired title as a holder in due course. No such evidence was offered, and no such proof was made. Furthermore though proof had been made that the defendant purchased the check for value and without notice in due course, still, as shown by the authorities above cited, he acquired no right or title under the forged indorsement of the plaintiff's name. The general rules applicable to *bona fide* holders for value do not apply in such a case. To the same effect also is our statute. (Section 1575, Comp. Laws 1907.)

The judgment of the court below is therefore reversed, and the cause remanded for a new trial. Costs to appellant.

FRICK and McCARTY, JJ., concur.