THE FIDELITY & DEPOSIT CO. OF MARYLAND, APPELLANT, *v.* THE FARMERS & CITIZENS BANK OF LANCASTER, OHIO, APPELLEE.

(No. 229—Decided January 16, 1943.)

*Mr. James M. Hengst* and *Mr. Homer Trantham,* for appellant.

*Messrs. Beck, Drinkle & Martin,* for appellee.

SHERICK, J. Plaintiff appeals to this court on a question of law from an order of the trial court sustaining a demurrer to its amended petition and the entering of judgment in defendant's favor. It is here urged that the court erred in so doing.

The action was commenced on September 27, 1941. The facts averred in plaintiff's pleading necessary to an understanding of the issue made are as follows:

Plaintiff sues upon an implied contract for money had and received. It is pleaded that one Frank E. Smith, on September 5, 1935, drew a check upon his account in The Fairfield National Bank of Lancaster, Ohio, in favor of The Mutual Benefit Life Insurance Company, and that one George A. Sterling, Jr., obtained possession thereof and forged the payee's endorsement thereon. He then presented the instrument to the defendant for payment. It cashed the check and was thereafter reimbursed by the drawee bank. Plaintiff further pleads that The Mutual Benefit Life Insurance Company, the payee, did not acquire knowledge of the transaction and of defendant's possession until November of 1936. On June 16, 1937, demand was made upon the defendant bank for payment. This it refused. Plaintiff, by assignment, is now possessed of all right and title to the instrument previously held by the insurance company.

The pleading proceeds to further state that plaintiff waives the tort and conversion and elects to sue on the resulting implied contract. It is apparent that this course is pursued in order that plaintiff may be advantaged by the more liberal statute of limitations; that is, six years upon an implied contract.

It is to be observed that defendant is not charged with knowledge of Sterling's wrongdoing. It must therefore be presumed to have acted in good faith. Neither is it pleaded that defendant was guilty of any fraud or concealment which prevented the insurance company from obtaining knowledge of the instrument's negotiation.

The demurrer questions the sufficiency of the pleading upon the sole ground that it shows upon its face that the cause of action is barred by lapse of time. If demand was necessary to establish defendant's conver-

sion-in order to bring plaintiff's cause of action to maturity, then it is evident that plaintiff commenced its action within six years from the demand for payment. But if demand was not a prerequisite to the right to sue, then six years had elapsed since defendant cashed and negotiated the check before the action was commenced and the statute would have brought the matter to repose. One question therefore is presented to this court. Was a demand necessary under this state of facts?

The proponents of both theories have diligently advanced Ohio authorities which they say support and establish their respective views. These we have examined. We confess our inability to completely reconcile all that is reasoned and said therein, but we are of the opinion that Ohio courts, with fair consistency, have adhered to the rule that if one rightfully secured possession of the property of another he could not be held to have converted it, or to wrongfully possess it, until he failed to restore it upon demand, or by some act or circumstance of his own creation he knowingly and unlawfully exercised dominion over it. The reason generally stated in support of this rule is to establish the conversion, which is but another way of expressing the clear statement thereof found in *Pease* v. *Smith*, 61 N. Y., 477, that "the sole object of a demand being to turn an otherwise lawful possession into an unlawful one, by reason of a refusal to comply with it, and thus to supply evidence of a conversion."

In conformity to this rule, it is held in Ohio that a sheriff or other officer charged with the duty of collecting and disbursing funds cannot be held liable for conversion or unlawful possession thereof until demand for restoration has been made upon him and refusal followed or he has done some act with respect thereto which amounts in law to the equivalent of a demand

and refusal. It therefore must appear that demand and refusal become not only a rule of pleading but one of evidence as well. The act of conversion or unlawful withholding is ordinarily not otherwise provable, for if possession is lawfully acquired, conversion cannot happen until something else makes possession unlawful. The demand requirement rule has also found application in cases where attorneys have collected sums for their clients, or where agents acting for their principals have gained lawful possession of property. It has also been invoked in cases growing out of bailment and common carrier contracts. In the great majority of like cases the rule is made to rest on the fact of rightful acquirement and possession in the first instance without regard to the lack of knowledge of the possessor as to whether his possession be lawful or unlawful. If possession be lawfully acquired then demand is necessary, unless dispensable because of the possessor's acts of dominion thereover.

It should follow as a matter beyond cavil that if possession be unlawfully acquired, the act of possessing is in itself the act of conversion, and demand and refusal are superfluous requirements. The fact that possession so acquired is wrongful is sufficient proof of conversion or of the breach of an implied contract. It does not need to be fortified with subsequent proof of demand and refusal. The reason for the rule of demand is totally lacking in such case and to require it is vain indeed. We think DeQuincey properly said, that "where there is no parity of principle, there is no basis for comparison."

What was the nature of defendant's possession? Clearly it was not only wrongfully acquired but wrongfully disposed of. The payee's endorsement was a forgery. It negotiated that to which it had no title. It thereby exercised dominion over that which was the

property of another, that is, the insurance company, and in so doing it did an act which was equivalent to and actually was a conversion. Section 8128, General Code, provides:

"When a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative. No right to retain the instrument, give a discharge therefor, or to enforce its payment against any party thereto, can be acquired through or under such signature * * *."

This section of the code should and does conclusively settle the point that the defendant wrongfully acquired possession of the instrument and wrongfully negotiated it. This occurred on September 5, 1935, more than six years prior to the day this action was commenced. It follows that the right to recovery arose on September 5, 1935, and that the statute of limitation then began to run against the payee and its present assignee of the claim. A case, like in principle, is found in *Warren* v. *Smith,* 35 Utah, 455, 100 P., 1069. The trial court's judgment is correct. It may be affirmed.

*Judgment affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.